Arnon PAZ and Hagar Paz, Plaintiffs,

v.

SHERWIN–WILLIAMS, Defendant.

Civil A. No. 95–562.

United States District Court,
District of Columbia.

March 6, 1996.

Joseph Montedonico, Montedonico, Hamilton & Altman, Washington, DC, and Michael Frank Barrett, Daniels, Saltz, Mangeluzzi & Barrett, Ltd., Philadelphia, PA, for plaintiffs.

Dwight D. Murray, Jordan, Coyne & Savits, Washington, DC, Robert Matthew Disch, Ross & Hardies, Washington, DC, John P. Penders, Bradley D. Remick, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, and Douglas V. Wolfe, Popham, Haik, Schnobrich & Kaufman, Washington, DC, for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

█ Plaintiff has moved for a judgment as a matter of law under Fed.R.Civ.P. 50. The standard for granting a motion for a directed verdict is the same as that applied when ruling on a motion for a judgment n.o.v. *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979)). In both cases:

"Unless the evidence, along with all inferences reasonably to be drawn therefrom, when viewed in the light most favorable to the [non-moving party] is such that reasonable jurors in fair and impartial exercise of their judgment could not reasonably disagree in finding for the [moving party] the motion must be denied." *Vander Zee v. Karabatsos, supra* (quoting *Alden v. Providence Hospital,* 382 F.2d 163, 165 (D.C.Cir.1967).

█ The burden on the moving party is a heavy one, and the Court should deny such a motion "where fair-minded people *might* differ as to" the appropriate verdict. *Murphy v. United States,* 653 F.2d 637, 640 (D.C.Cir. 1981) (emphasis added). The Court may find for the moving party only if "there is no legally sufficient basis for a reasonable jury to find" for the non-moving party. *Id.*

The undisputed facts before this Court are as follows: It has been stipulated that the truck was owned by Sherwin–Williams (hereinafter "the truck") and driven by a Sherwin–Williams employee acting within he scope of his employment. The truck was traveling south bound on 14th Street. The truck was equipped with side-view mirrors that extended beyond the width of the truck, in order to allow the driver to see behind the vehicle. The total width of the truck, including its side-view mirrors was 9 feet, 9 inches. The south bound curb lane on 14th Street is very narrow, measuring only 10 feet 2 inches. Shortly before the accident, the truck driver switched from the middle lane to the curb lane because there was less vehicular traffic in the curb lane. Mr. Paz was standing on the corner of 14th Street and Madison N.W., waiting for the light to change. While standing close to the curb, but not in the street, Mr. Paz was struck on the side of his head by the side-view mirror of the passing truck.[1] The driver testified that he saw people standing on the corner, but did not believe they were in any danger. He also testified that his side-view mirrors often struck objects, such as tree branches, while he was operating the vehicle.[2] The driver was not immedi-

---

1. Two eye witnesses testified that his toes might slightly have been extended over the curb.

2. The driver reported his version of the accident to an insurance company investigator in these words:

ately aware that his outstretched mirrors had struck Plaintiff until some two blocks away from the accident scene when a motorist told him what had happened. The driver returned to the site of the accident. When asked about the accident, the driver remembered that he had felt and heard something when he passed the Madison Avenue intersection. He thought that his side mirror may have struck the pole housing the traffic signal. The pole was located well within the sidewalk where the truck's mirrors had no right to be.

█ A person using a sidewalk is entitled to be free from bodily injury caused by trucks or other vehicles using the highway. Drivers must keep a safe distance away, so that no part of their vehicle can strike pedestrians. If some part of a vehicle does strike an individual on the sidewalk, a prima facie case of negligence is shown. *Calbreath v. Capital Transit Company*, 240 F.2d 621, 622–623 (D.C.Cir.1956).

█ It is clear that the driver failed to exercise the level of care required to operate a vehicle with extended mirrors safely. As the Defendant's expert witness testified, the driver while properly driving within the curb lane, had a margin of error of only 2½ inches on either side of the truck. In addition, while the driver was on notice from prior experience that his mirrors might strike objects on the side of the road, he made no effort to avoid such contact.[3] Rather than proceeding forward in either of the other two available lanes, he positioned himself in the curb lane, exposing pedestrians to the danger of his over-hanging mirrors. There is no question that the driver saw people standing on the corner of 14th and Madison as he made his way down 14th Street. Although he saw pedestrians on the sidewalk, he did nothing to alert them of the possible danger presented by the truck's mirror. He neither reduced his rate of speed, nor sounded his horn to warn pedestrians of the oncoming danger.

When attempting to navigate a large vehicle with oversized mirrors down narrow city streets, a driver must exercise the degree of care demanded by the circumstances. The requisite care was not exercised by the driver in this case when his truck struck Plaintiff while he was standing on the curb. Accordingly, the Court finds the driver of the vehicle to be negligent as a matter of law.

This result pertains even though the truck in question passed inspection by the D.C. Department of Motor Vehicles. A vehicle passing inspection, or being of legally acceptable dimensions, does not give license to the person operating the vehicle to strike pedestrians standing on the curb. To hold otherwise would be to transfer the risk from the driver of a vehicle with extended mirrors to the pedestrian and effectively create an "open season" on D.C.'s pedestrians. This would be especially so in a city such as Washington D.C., where the many monuments and museums create a magnet for pedestrian traffic.

█ The testimony of Defendant's accident reconstruction witness that Plaintiff may have been leaning into the roadway by a few inches at the time of the accident does not create a triable factual issue. The witness's testimony at best offered one possible way that the accident may have happened. His testimony rested solely on his analysis of where Plaintiff was struck by the Defendant vehicle's mirror. He reasoned that because of Plaintiff's height and the location of the injury, he had to be leaning forward for the mirror to strike the Plaintiff near or about his temple. Because there were other possibilities just as plausible as the theory that Plaintiff was leaning forward into the roadway, it would be rank speculation for the jury to select which version is the cause of the accident. The two to three inches of height

---

OK. I was going down um 14th Street, about to go over the bridge. And I just start going up the street and my mirror hit something but I thought it was like a tree branch because my mirror always hit tree branches all the time. And next thing I know a car pulled up beside me and say I hit somebody. So I turned back around and went back to the scene and they say my mirror smacked them on the curb. (Plaintiff's Exhibit 23, page 2)

3. As noted, the driver testified that after the accident, he thought that he might have struck the light pole on the corner. This pole was well beyond the curb and on the sidewalk.

reduction was just as explainable by the spread of Plaintiff's legs or that he may have been slouching at the time of the accident or may have been leaning to his left. There is no competent eye witness testimony that Plaintiff was leaning forward.[4]

Defendant's expert witness conceded that for his opinion to be plausible, the jury would have to disregard two eye witnesses' testimony that Defendant's truck was approximately 6 inches from the curb when it struck Plaintiff. Acceptance of such uncontroverted eye witness testimony would have placed the truck's mirrors some 3 inches over the sidewalk when it struck Plaintiff Arnon Paz. Defendant's expert acknowledged this fact and testified that if the mirror extended over the sidewalk, it would be "unacceptable." For these reasons, this Court finds the expert's opinion to be without probative value and cannot support a trier of fact making a finding of contributory negligence on the part of Plaintiff Arnon Paz.

The proximate cause of the accident was Defendant's driving a vehicle with overhanging mirrors in a zone too close to pedestrian traffic without the driver exercising the requisite prudence and care. Pedestrians are entitled to assume there will be no danger from vehicular traffic when they are standing on the sidewalk waiting to cross the street.

The unrefuted testimony shows that the Plaintiff was standing on the curb. He had every right to be there and was not exposing himself to danger by standing on a street corner waiting for the traffic signal to change so that he and his wife might cross the street.

Plaintiff's actions in no way can be considered a proximate cause of the accident. Where there is heavy pedestrian traffic, an operator of a vehicle with extended mirrors driving in a narrow lane with at most a 2½ inch clearance from the sidewalk, must navigate the vehicle in a way that will not cause harm to a pedestrian at or near the roadway. At all times, he must know where the pedestrians are stationed and how close the extended part of the vehicle he is driving happens to be to those who may be near the roadway about to cross the road. An operator of a vehicle does not relieve himself of responsibility by acknowledging that he did not know that he had struck a pedestrian thinking that the rattle he received from his mirror at the time of impact was because he might have hit the traffic signal.[5] This is particularly so where the driver recently switched lanes and had entered the curb lane for his own convenience because there was less vehicular traffic in that lane.

### Last Clear Chance Doctrine

█ Even assuming that Plaintiff was contributorily negligent in this matter, the Court finds that he would be entitled to the benefit of the last clear chance doctrine. To succeed under this doctrine, Plaintiff Paz has the burden to prove by a preponderance of the evidence each of the following:

(1) that Plaintiff Paz was in a position of danger caused his own negligence and that of the Defendant;

(2) that Plaintiff Paz was oblivious to the danger, or unable to extricate himself from the position of danger;

(3) that the Defendant's driver was aware, or by the exercise of reasonable care

---

4. The Police officer who came on the scene stated in his report that eye witnesses said that Plaintiff may have been leaning forward at the time of the accident. At trial the Police officer stated that he was in error when he said there were "witnesses." He testified that there was only one witness, a Shelly Wilson, who had already testified by video tape. In her testimony, there is no mention of Plaintiff's "leaning forward" at the time of the accident. Based upon the Court of Appeals ruling in *Belton v. WMATA*, 20 F.3d 1197, 1202 (D.C.Cir.1994) citing *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1186 (8th Cir.1981), the Court sustained Plaintiff's objection to the accident report being received on

this point. The statement contained in the report was excluded because it was hearsay. The court in fairness to the Defendant told Defendant's counsel that he would be given the weekend to locate the witness and have her re-testify in person when Court resumed on Monday morning. Defendant was unable to re-present the witness so she could be heard on this point. Defendant's counsel stated that his effort to reach the witness was to no avail as he believed she was out of town.

5. It is undisputed the traffic signal was stationed well within the sidewalk.

should have been aware, of Plaintiff Paz's danger and his oblivion to it, or his inability to extricate himself from it; and

(4) that the Defendant's driver, with means available to him, could have avoided injuring Plaintiff, after becoming aware of the danger and Plaintiff Paz's inability to extricate himself from it, but failed to do so. *Belton v. WMA-TA,* 20 F.3d 1197, 1199–1200 (D.C.Cir. 1994).

 It is clear that Plaintiff was oblivious to the danger that confronted him. The truck driver had driven the same route many times before. He was aware that the lane was quite narrow and that his wide mirrors were a problem having in the past struck objects outside the roadway. The driver testified that on the day of the accident, he was aware of a number of pedestrians standing on the sidewalk. He thus was aware that the position and configuration of his vehicle presented a danger to pedestrians. It was the truck driver who had the duty to assess the situation and to take steps necessary to avoid the accident. There is no dispute that the last clear chance to avoid the accident rested with Defendant's driver.

The Court rejects Defendant's theory that because its vehicle passed inspection, there was no requirement for its driver to take any extra precaution to properly control the vehicle to avoid hitting objects and pedestrians on the sidewalk. Defendant has also complained that it is the government's obligation to construct streets with wider lanes. Both of these points must be flatly rejected. If Defendant wants to put a vehicle on the street with a dangerous configuration, it must bear the consequences. It cannot transfer the risk to the unsuspecting pedestrian.

Based upon the evidence presented in this matter, the Court finds that there is no legally sufficient basis for fair-minded and reasonable jurors to find for the Defendant on the issue of liability.

### ORDER

This matter comes before the Court on Plaintiff's motion for judgment as a matter of law under Fed.R.Civ.P. 50. For the reasons stated in the Court's Memorandum Opinion of this date, it is hereby

**ORDERED** that Plaintiff's motion be **GRANTED.** It is further

**ORDERED** that judgment as a matter of law be entered against the Defendant on the issue of liability.